UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARYLIN MONAE PORTER
a/k/a LAMONE M. JOHNSON,

      **Plaintiff,**

v.

JOEL MCCURDY, et al.,

      **Defendants.**

Case No. 23-CV-058-RAW-GLJ

## OPINION AND ORDER

    Plaintiff Marylin Monae Porter ("Plaintiff"), a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983. Dkt. No. 72. Before the Court is the Motion to Dismiss submitted by Defendants Joel McCurdy, Kim Hall, Christie Quick, Earlene Sylvester, Terri Apala, Jim Farris, Dixon, and Tinsley.[1] Dkt. No. 126. Plaintiff has responded in opposition to the motion. Dkt. No. 136. For the reasons discussed herein, the Court GRANTS Defendants' motion and dismisses the Amended Complaint without prejudice.[2]

---

[1] Defendants Dixon and Tinsley are referenced only by their surnames in the Amended Complaint and Motion to Dismiss. Dkt. No. 72, at 2.

[2] In addition to the moving Defendants, Plaintiff also names as defendants Chief Medical Officer Ross Fisher, in his individual and official capacities, and "Collective John Does of Utilization Review Committee." Dkt. No. 72, at 6, 10. In a separate dismissal motion, Defendant Fisher states that he was served only in his official capacity and seeks dismissal of the official capacity claims raised against him as barred by Eleventh Amendment immunity. Dkt. No. 133, at 2, 5-8. Because the Court finds Plaintiff has failed to state a claim for relief against any Defendant, as discussed herein, the Court finds dismissal against Defendant Fisher and the Collective John Does of Utilization Review Committee proper under 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c)(1).

I. LEGAL STANDARD

Defendants have moved to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The litigant must plead factual content that "allows the court to draw the reasonable inference" of the defendant's liability. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

In assessing a motion to dismiss, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted). However, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). While the Court construes a pro se litigant's pleadings liberally, this liberal construction "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

II. DISCUSSION

Plaintiff, a male-to-female transgender woman, asserts that her Eighth and Fourteenth

2

Amendment rights were violated while she was housed at the Oklahoma State Penitentiary ("OSP"), in McAlester, Oklahoma. She brings four claims for relief and seeks compensatory and punitive damages, as well as injunctive relief. Dkt. No. 72, at 13, 19-20, 22-23, 30-31, 34-35.

    a. <u>Claim 1: Deliberate Indifference to Serious Medical Needs</u>

In her first claim for relief, Plaintiff alleges Defendants McCurdy, Sylvester, Quick, Farris, Hall, Tinsley, Fisher, and "Collective John Does of the URC" were deliberately indifferent to her serious medical needs in several respects. Dkt. No. 72, at 12-20. Claims of constitutionally inadequate medical care typically are analyzed under the Eighth Amendment, which proscribes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). An Eighth Amendment violation occurs if a prison official is "deliberate[ly] indifferen[t] to an inmate's serious medical needs." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The test for liability "involves both an objective and a subjective component." *Id.* The objective component is met if "the deprivation at issue was . . . 'sufficiently serious.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted). "The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference.'" *Id.* (alteration omitted) (quoting *Farmer*, 511 U.S. at 837).

    i. *Discontinuation of Hormone Replacement Therapy*

Plaintiff claims that, prior to her entry into state custody, she was diagnosed with gender

3

dysphoria and had been on hormone replacement therapy ("HRT") for three years. Dkt. No. 72, at 13-14. Plaintiff alleges that on May 11, 2018, a psychologist at Dick Conner Correctional Center, who is not named as a defendant in this action, incorrectly determined Plaintiff did not have gender dysphoria and, based on this evaluation, discontinued Plaintiff's treatment.[3] *Id.* at 14. Plaintiff claims she advocated for hormone replacement therapy for over two years after its discontinuation and that the discontinuation of treatment caused migraines, as well as several unwanted physical changes. *Id.* Plaintiff states that Defendant McCurdy was "the Chief Medical Officer at the time of the [May 2018] discontinuation of HRT" and that he sat on the Medical Administrative Review Authority committee that affirmed the discontinuation. *Id.* at 15.

Without more, the allegation that McCurdy affirmed a medical determination with which Plaintiff disagrees in insufficient to demonstrate deliberate indifference under the Eighth Amendment. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.").

Further, Plaintiff's allegations suggest her claim against McCurdy is time-barred. *See Stevenson v. Grace*, 356 F. App'x 97, 98 (10th Cir. 2009) ("A § 1983 claim arising in Oklahoma is subject to a two-year statute of limitations.").[4] Plaintiff initiated this action in February 2023, nearly five years after the May 2018 discontinuation of HRT. Pursuant to prison policy, which

---

[3] The 2018 discontinuation of Plaintiff's HRT was the subject of a separate lawsuit. *See Johnson v. Sanders*, 121 F.4th 80 (10th Cir. 2024).

[4] The Court cites unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

4

Plaintiff attached to her Amended Complaint, the reviewing authority has only thirty days from receipt of the prisoner's review request to conduct the review. Dkt. No. 72-2, at 4; *see Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registrations Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) ("In evaluating a motion to dismiss, we may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference."); *see also Johnson*, 121 F.4th at 86-88 (discussing Plaintiff's "formal requests related to the discontinuation of her HRT regimen"). The Court therefore cannot reasonably infer that the appeal of the May 2018 decision occurred within the two-year limitation period for § 1983 claims.

    ii. *Denial of Fertility Procedure*

Plaintiff then alleges that on May 27, 2020, she was "reevaluated and again diagnosed with gender dysphoria by Dr. Susan Shields," a physician with the Oklahoma Department of Corrections ("ODOC"). *Id.* at 15. Plaintiff expressed to Dr. Shields her "need for surgery and freezing her sperm . . . so that she may have children via surrogate one day post-incarceration." *Id.* Plaintiff, however, provides no facts regarding the denial of this request. Plaintiff did not name Dr. Shields as a defendant in this action, and she fails to allege the personal participation of any defendant in relation to this issue. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("The [§ 1983] plaintiff must show the defendant personally participated in the alleged [constitutional] violation."); *see Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (explaining that a plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation" to establish supervisory liability (internal quotation marks omitted)). Further, this claim likewise appears to be time-barred. *See Stevenson*, 356 F. App'x at 98.

    iii. *Denial of Requests for Gender-Affirming Treatments*

Plaintiff additionally asserts that, on May 18, 2021, she "submitted 3 sick call requests" for

5

"fillers[] (Juvederm injections)[,] a breast lift/augmentation, [and] face lift (facial feminization surgery)" at her own expense, "due to the injuries from HRT discontinuation." Dkt. No. 72, at 16. Plaintiff claims she "also requested Gender Reassignment Surgery (GRS) at ODOC expense for her injuries due to . . . McCurdy allowing her to go through the physical, chemical transition from female back to male due to a biased evaluation report." *Id.* at 16-17. Plaintiff claims "Collective John Does of URC" denied these requests, despite her meeting the requisite criteria under ODOC policy and "[World Professional Association for Transgender Health] standards of care." *Id.* at 17. Plaintiff alleges she appealed to the Personal Identity Administrative Review Authority, which includes Defendant McCurdy, but the appeal was denied. *Id.* Finally, Plaintiff states that she "continues to request breast augmentation through her Warden Jim Farris and the Correctional Health Services Administrator . . . Kim Hall[,] to only be told it's not a medical issue, it's a legal issue, and that they are waiting for 'legal' to decide the surgery." *Id.*[5]

In a previous action brought by Plaintiff, the Tenth Circuit explained that "§ 1983 defendants can be held liable for withholding, with deliberate indifference, *any* form of treatment for gender dysphoria." *Johnson*, 121 F.4th at 92. When, however, a prisoner receives medical treatment, courts consider "whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* (internal quotation marks omitted) (quoting *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023)); *see Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison officials do not act

---

[5] Plaintiff includes additional allegations in her first claim for relief that are unrelated to medical care. These include allegations that Plaintiff was denied female undergarments and certain beauty items and that her litigation was interfered with by the confiscation of surgical pictures. *Id.* at 16-18. Because Plaintiff did not frame these allegations as additional constitutional violations or separate claims for relief, the Court will not construe them as such. *See Whitney*, 113 F.3d at 1175 (explaining that courts need not "construct a legal theory on a plaintiff's behalf").

with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). The Tenth Circuit has "identified four currently available modes of treatment for gender dysphoria: changes in gender expression and role, hormone therapy to make the body feminine or masculine, surgery to change primary or secondary sex characteristics, and psychotherapy." *Johnson*, 121 F.4th at 92.

Plaintiff alleges that her HRT was discontinued on or around May 11, 2018, and that she "advocated nonstop for over 2 years to reenter HRT." Dkt. No. 72, at 14. She then alleges she was "reevaluated and again diagnosed with gender dysphoria" on May 27, 2020. *Id.* at 15; *see* Dkt. No. 72-13, at 6-10. Plaintiff does not allege she was denied HRT after the May 2020 diagnosis, and the Court cannot reasonably infer from the allegations that the denial continued past that date. *See* Dkt. No. 72-2, at 2-3 (prison policy permitting inmates with a confirmed diagnosis of gender dysphoria to requests specific treatments, including hormone therapy); Dkt. No. 136, at 14 (Plaintiff referring to the discontinuation as a "2 year hiatus off HRT"). Because Plaintiff provides no facts indicating she was not receiving HRT at the time of her 2021 requests for other gender-affirming treatments, Plaintiff has not shown the complete denial, or the functional equivalent of a complete denial, of medical care. *See Johnson*, 121 F.4th at 93 ("[A] convicted prisoner is not constitutionally entitled to their preferred treatment, and a prisoner's disagreement with a course of treatment is insufficient to establish a constitutional violation."); *see Lamb*, 899 F.3d at 1163 ("[P]rison officials could not have been deliberately indifferent by implementing the course of treatment recommended by a licensed medical doctor.").

Further, Plaintiff's allegation that Defendants McCurdy, Farris, Hall, and Collective John Does of URC denied requests or appeals is insufficient to demonstrate that Defendants acted with the requisite state of mind to support an Eighth Amendment claim. Plaintiff provides no facts

suggesting these Defendants were on notice that the denial of the requested gender-affirming treatments and surgeries would create an excessive risk to Plaintiff's health. *See Farmer*, 511 U.S. at 837 ("[T]he official must . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists."); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("[A] mere difference of opinion . . . as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.").

      b. <u>Claim 2: Fourteenth Amendment Equal Protection Violation</u>

  Plaintiff next claims Defendants violated her right to equal protection under the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Individuals are "similarly situated" only if they are alike "in all relevant respects." *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). "An equal protection claim may challenge legislation or the conduct of individual state actors." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). A plaintiff "'who alleges [such] an equal protection violation has the burden of proving the existence of purposeful discrimination' causing an adverse effect." *Id.* (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). Further, "[a]n equal protection claim must allege that the challenged state action purposefully discriminates based on class membership." *Fowler v. Stitt*, 104 F.4th 770, 784 (10th Cir. 2024) (explaining the plaintiff must "allege[] facts from which [the court] may reasonably infer purposeful discrimination on the basis of transgender status").

8

Plaintiff alleges Defendants McCurdy, Hall, Sylvester, Apala, Farris, Dixon, Tinsley, Fisher, and Collective John Does of URC "all discriminated against Plaintiff's medical diagnosis and treatments for it because of her race and status as a trans person." Dkt. No. 72, at 21-22. Plaintiff further alleges:

> Plaintiff[,] a Creole Afro American transwoman[,] was treated differently than other prisoners with different races that are transwom[e]n who[] may order [certain] items of property through Amazon.com. These Defendants listed also denied Plaintiff medical surger[ie]s, delayed these surgical treatments while non Trans or non Creole American Trans rec[ei]ve treatment for medical needs. As well as denied phone calls to phone numbers not available for contact through their service provider but giving the same phone calls to other inmates who are non Trans, as well as allowing full due process to non Trans people by interviewing witnesses and retrieving said documents to prove their side of events, as well as allowing them to testify fully at the hearing without interrupting.

*Id.* at 20-21.

The Court finds these allegations too vague and conclusory to allow the Court to draw a reasonable inference of any Defendant's liability. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). In the context of § 1983 cases, it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1249-50 (emphases in original). Plaintiff broadly ascribes the alleged conduct to Defendants collectively, rather than differentiating each Defendant's actions. Accordingly, she has failed to provide the specificity necessary to permit the Court to draw the reasonable inference of any Defendant's liability. *See Iqbal*, 556 U.S. at 678.

9

What remains of the claim are Plaintiff's allegations against Defendants Apala and Dixon: (1) "Terri Apala discriminated against [her] by giving non trans inmates 'outside line' phone calls but not Plaintiff a transwoman"; and (2) "Terri Apala and LT – Dixon, both discriminated, falsified documents, evidence during Plaintiff's Due Process for a class X misconduct while giving non trans people the full opportunity to defend and present evidence." Dkt. No. 72, at 22. Both allegations fail to provide sufficient factual matter to suggest plausible, rather than merely possible, entitlement to relief. *See Twombly*, 550 U.S. at 570 (finding complaint must be dismissed where plaintiffs failed to provide sufficient facts to "nudge[] their claims across the line from conceivable to plausible"); *Fowler*, 104 F.4th at 785-86 (explaining the plaintiff must "allege[] facts from which [the Court] may infer purposeful discrimination on the basis of transgender status").

The documents attached to Plaintiff's Amended Complaint do not alter this finding. Plaintiff attached a Request to Staff and Offender Grievance in which Plaintiff states she is unable to use the "pod phone" to call her father's insurance company and requests the use of a staff phone. Dkt. No. 72-8, at 1-3; *see Commonwealth Prop. Advocs., LLC*, 680 F.3d at 1201. These documents reflect that Defendant Apala denied Plaintiff's Request to Staff, noting, "You can utilize the pod phone for this call." *Id.* at 1. Plaintiff's subsequent Grievance was denied on the basis that, pursuant to prison policy, "[p]hone calls will not be made to a business number unless for a pre-approved number such as an attorney or inmate trust fund debit card balance inquiry hotline." *Id.* at 3.

Because the Grievance reflects that Plaintiff's desired phone call would violate prison policy and Plaintiff fails to allege that the non-transgender inmates' phone calls likewise violated the referenced policy, Plaintiff has not plausibly alleged the inmates were similarly situated. Further, Defendant Apala's response to Plaintiff's Request to Staff demonstrates, at most, mistake

regarding Plaintiff's ability to use the pod phone, and "[m]ere negligence or mistake resulting in uneven application of the law is not an equal protection violation." *Roe ex rel. Roe v. Keady*, 329 F.3d 1188, 1191-92 (10th Cir. 2003).

Regarding Plaintiff's latter allegation, that Defendants Apala and Dixon falsified documents and evidence, Plaintiff likewise fails to plausibly allege she and the unidentified inmates were similarly situated or provide specific facts regarding the alleged falsification. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1323 (10th Cir. 2010) (rejecting equal protection claim "consist[ing] merely of vague and conclusory allegations, without any specific facts, that white inmates were treated more favorably"); *Lucas*, 58 F.4th at 1146 ("Conclusory allegations without facts that refer to a particular person or persons treated differently are insufficient to state a claim."). Further, Plaintiff provides no facts to support an inference of discriminatory intent. Plaintiff's conclusory assertion that non-transgender inmates and inmates of a different race were treated differently is insufficient to permit the Court to reasonably infer purposeful discrimination on the basis of transgender or racial status. *See Fowler*, 104 F.4th at 784.

    c. <u>Claim 3: Fourteenth Amendment Due Process Violations</u>

Plaintiff next claims that Defendants Apala and Dixon violated her Fourteenth Amendment Due Process rights in relation to a prison disciplinary action. Dkt. No. 72, at 23-31. She claims Defendant Dixon "refused to present her evidence and call her witnesses" and failed to provide a "nonbiased hearing." *Id.* at 29. Plaintiff alleges Defendant Apala "refused to allow the same, and interrupted Plaintiff's testimony very disrespectfully." *Id.*

Under the Fourteenth Amendment, states are prohibited "from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). While this guarantee applies to prisoners, "their due process rights are defined more narrowly." *Id.* In *Sandin*

11

*v. Conner*, 515 U.S. 472 (1995), the Supreme Court "concluded that a prisoner is entitled to due process before he is subjected to conditions that 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' or disciplinary actions that 'inevitably affect the duration of his sentence.'" *Wilson*, 430 F.3d at 1117 (quoting *Sandin*, 515 U.S. at 484, 487). In determining whether an imposed condition is an atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life, courts consider "both the duration and degree of plaintiff's restrictions as compared with other inmates." *Perkins*, 165 F.3d at 809.

Plaintiff cites a Disciplinary Hearing Report attached to her Amended Complaint, which reflects that the disciplinary action resulted in a 365-day restriction on visitation, canteen, and phone privileges. Dkt. No. 72, at 29; Dkt. No. 72-9, at 7-8. "[R]estrictions on an inmate's telephone use, property possession, visitation and recreation privileges," however, "are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause." *Requena v. Roberts*, 893 F.3d 1195, 1218 (10th Cir. 2018) (internal quotation marks omitted); *see Coleman v. Long*, 772 F. App'x 647, 648-50 (10th Cir. 2019) (rejecting prisoner's due process challenge to a one-year revocation of visitation and telephone privileges, explaining that the Constitution does not create "a liberty interest in visitation and telephone privileges"); *see also Overton v. Bazzetta*, 539 U.S. 126, 134-37 (2003) (concluding a two-year "restriction on visitation for inmates with two substance-abuse violations" was "not a dramatic departure from accepted standards for conditions of confinement"). Nor has Plaintiff alleged that the disciplinary action will "inevitably affect the duration of [her] sentence." *Sandin*, 515 U.S. at 487; *see Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) ("[E]ven though a parole board may consider an inmate's misconduct convictions as a relevant consideration when deciding whether to grant parole, '[t]he chance that

12

[this] finding . . . will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.'" (quoting *Sandin*, 515 U.S. at 487)).

Accordingly, the Court concludes that Plaintiff's allegations do not plausibly show that she was subjected to conditions entitling her to due process under the Fourteenth Amendment. Plaintiff's due process claim therefore fails under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    d.   <u>Claim 4: Deliberate Indifference to a Serious Medical Need</u>

Plaintiff alleges in her fourth claim for relief that Defendant Hall, a correctional health services administrator, caused a delay in Plaintiff's receipt of medical care for Amblyopia, a condition commonly known as "lazy eye." Dkt. No. 72, at 7, 31-34. According to Plaintiff's allegations and administrative relief documents attached to her Amended Complaint, Plaintiff submitted a Request to Staff and Grievance asking that an appointment be made with an ophthalmologist at Dean McGee Eye Institute for Amblyopia surgery. *Id.* at 31; Dkt. No. 72-13, at 1-2. Defendant Hall responded to Plaintiff's Request to Staff by stating, "We have put you on the optometrist list to be seen." Dkt. No. 72-13, at 1. In response to a subsequent Grievance, Hall advised Plaintiff that he "must first see the optometrist at OSP in order to get a referral" and that Plaintiff was "scheduled to see the optometrist." Dkt. No. 72-13, at 1, 3. Plaintiff alleges she was ultimately seen at Dean McGee Eye Institute for a surgery evaluation on March 1, 2022, and the physician suggested Plaintiff return for a follow-up appointment in four to six weeks. Dkt. No. 72, at 32-33. Plaintiff alleges Defendant Hall "cancel[l]ed Plaintiff's appointment because [Plaintiff] transferred to another facility." *Id.* at 33. Plaintiff then returned to OSP and requested that her follow-up appointment be rescheduled. *Id.* Plaintiff was seen again at Dean McGee Eye Institute on June 7, 2022, and, though surgery was recommended, Plaintiff alleges she still has not

13

received it. *Id.* at 33-34.

As noted, an Eighth Amendment claim of deliberate indifference to a serious medical need involves both an objective and subjective component, requiring the plaintiff to plausibly allege both that the deprivation at issue was "sufficiently serious" and that the prison official knew of and disregarded an excessive risk to inmate health or safety. *Sealock*, 218 F.3d at 1209. The deliberate indifference standard can be met both in the context of a medical professional "fail[ing] to properly treat a serious medical condition" and under the "gatekeeper theory." *Lucas*, 58 F.4th at 1137. Under the latter theory, a medical professional or prison official may be liable under the Eighth Amendment if he or she "knows that his [or her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, [but] . . . delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Sealock*, 218 F.3d at 1211.

Nothing in Plaintiff's allegations suggests Hall disregarded an excessive risk to Plaintiff's health. Hall scheduled Plaintiff to see an OSP optometrist who would refer Plaintiff for further treatment, if necessary. Dkt. No. 72-13, at 3; *see Lucas*, 58 F.4th at 1137 (explaining that the gatekeeper theory applies to a defendant who "prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment"). Hall, therefore, fulfilled her role as gatekeeper. The allegations do not suggest that Hall had the authority to bypass the typical procedure requiring a medical referral or that Hall had information suggesting the OSP optometrist was not capable of evaluating Plaintiff's need for treatment or referral.

Nor can the Court infer deliberate indifference from Plaintiff's allegation that Hall cancelled Plaintiff's Dean McGee Eye Institute follow-up appointment due to Plaintiff's transfer to a different facility. Plaintiff provides no facts suggesting that Hall could serve as gatekeeper at

Plaintiff's new facility, that the cancelation following transfer was discretionary, rather than mandated by policy, or that Hall was "aware of facts from which the inference could be drawn" that the delay caused by cancelation would create a substantial risk of serious harm to Plaintiff's health and that Hall drew that inference. *Farmer*, 511 U.S. at 837.

Even if Plaintiff had plausibly alleged Hall acted with deliberate indifference, her Eighth Amendment claim would nonetheless be unsuccessful. Delay in medical care "only constitutes and Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210; *see Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." (alteration and internal quotation marks omitted)). The allegations suggest that the cancelation resulted in a delay of roughly three months. Plaintiff provides no allegations suggesting substantial harm occurred to her vision during this period.

III. CONCLUSION

For the reasons discussed herein, the Court concludes that Plaintiff has failed to state a plausible claim for relief against Defendants.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. the Motion to Dismiss submitted by Defendants Joel McCurdy, Kim Hall, Christie Quick, Earlene Sylvester, Terri Apala, Jim Farris, Dixon, and Tinsley [Dkt. No. 126] is GRANTED, and the claims against these Defendants are dismissed without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

2. the claims raised against Defendants Ross Fisher and Collective John Does of Utilization Review Committee are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c)(1);

3. all additional pending motions [Dkt. Nos. 133, 145, 151] are DENIED as moot; and

4. a separate judgment of dismissal shall be entered in this matter.

**DATED** this 13th day of March, 2025.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE